# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6203 | **DATE** | 4/6/2004 |
| **CASE TITLE** | JAHN, et al. vs. GREAT AMERICAN ASSURANCE CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment [11-1] is granted. Plaintiffs' motion for summary judgment [13-1] is denied. The following pleadings filed without leave of court are stricken: plaintiffs' motion to strike [18-1], defendant's brief in opposition to plaintiffs' motion to strike [23-1], and defendant's statement of additional material facts [22-1]. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | APR 0 7 2004 date docketed |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | 4/6/2004 date mailed notice |
| CB | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 2004 APR -6 PM 3:47 | PW mailing deputy initials |

Date/time received in central Clerk's Office

**Document Number**

DEBORAH JAHN and SEVEN OAKS
FARM, L.L.C.,

     Plaintiffs,

  v.

GREAT AMERICAN ASSURANCE
COMPANY,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)

No. 03 C 6203

Suzanne B. Conlon, Judge

DOCKETED

APR 0 7 2004

## MEMORANDUM OPINION AND ORDER

This dispute arises over a $125,000 insurance policy on Irish Shannon, a show horse euthanized following her third surgery for gastrointestinal impaction ("colic"). The horse's owners, Deborah Jahn and her Seven Oaks Farm (collectively "plaintiffs"), seek a declaratory judgment they are entitled to the insurance proceeds. The insurer, Great American Assurance Company ("Great American"), denies coverage on the grounds that plaintiffs failed to fully disclose Irish Shannon's significant history of colic problems, and for failure to comply with the notice and *post mortem* examination conditions of the policy. Cross-motions for summary judgment are before the court.

## BACKGROUND

### I.  Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. Both the moving and non-moving parties must submit statements of material facts, including "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(a)(3); Local Rule 56.1(b)(3)(B). Facts not properly supported by the record evidence must be disregarded. *Brasic v. Heinemann's Inc.*, 121

F.3d 281, 284 (7th Cir. 1997). The parties' statements of facts and their respective responses are peppered with legal and factual arguments unsupported by record evidence. See Def. Facts ¶¶ 6, 19, 40, 42-49, 54-55, 58-59, 62-63, 66-67, 69-70, 71, 73-76, 81, 83-85, 88, 91, 95-96, 99; Pl. Facts ¶¶ 42; Def. Resp. Pl. Facts ¶¶ 9, 17, 20, 44-45, 52, 74, 76, 82, 84-86, 90, 95; Pl. Resp. Def. Facts ¶¶ 18-21, 24-25, 30, 33, 42, 45-47, 54, 59, 66-67, 70-71, 73-74, 78, 81, 83, 85, 87-88, 91,96-97; Def. Resp. Pl. Add. Facts ¶¶ 2, 11, 13-15, 20, 22, 24. "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertion in an organized manner; it is not intended as a forum for factual or legal argument." *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). The court considers only the parties' factual statements to the extent they are properly supported by the record.

Great American relies on unauthenticated veterinary records to support ¶¶ 9, 13, 31, 43, 48, 49, 53, 54, 58, 60, 61, 62, 65, 68, 72, 75, 90, 91. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)(evidence submitted at the summary judgment stage must be admissible at trial). Therefore, these paragraphs are disregarded to the extent that no other record evidence, such as deposition testimony, supports these factual assertions. In addition, plaintiffs improperly submit an unnumbered factual statement between their response to Great American's statement of facts and their own statement of additional facts. Pl. Resp. Def. Facts at p. 35. The court disregards plaintiffs' unnumbered statement because it fails to comply with the explicit language of Rule 56.1(b)(3)(B) and Great American appropriately did not respond.

## II.    Facts

The following facts are undisputed unless otherwise noted. Great American is an insurance company writing mortality and major medical policies for horses. Def. Facts at ¶ 2. Jahn has been

in the horse business for approximately 20 years and has read and purchased equine mortality insurance policies. Def. Facts ¶¶ 4-5; Pl. Resp. Def. Facts ¶ 5. In 1996, Jahn purchased Irish Shannon, a registered American Saddlebred mare, for $150,000 through her horse trainer, Lisa Strickland. Pl. Facts ¶¶ 4, 6-7. In 1998, Jahn established Seven Oaks Farm for her horse business. Pl. Facts ¶ 3; Def. Facts ¶ 1.

## A.    Insurance Policy Application History

Irish Shannon was initially insured through the Plamp-Keen Insurance Agency ("Plamp-Keen") for $150,000 from 1996 until May 2000. Id. at ¶ 8. On November 13, 1998, Irish Shannon underwent surgery because of colic. Pl. Facts at ¶ 14. As a result, the insurer excluded "death as a direct or indirect result of colic" from Irish Shannon's insurance policy when it was renewed in May 1999. Def. Facts ¶ 10; Pl. Facts ¶ 15. Jahn was later told that the exclusion would be eliminated from the policy if Irish Shannon did not suffer from colic during the calendar year following the November 1998 surgery. Def. Facts ¶¶ 10, 12; Pl. Facts ¶ 16. However, on October 10, 1999, Irish Shannon underwent a second surgery for colic. Pl. Facts ¶ 17. Jahn decided not to renew Irish Shannon's insurance policy in May 2000 because the renewed policy would necessarily contain a colic exclusion. Pl. Facts ¶ 18; Def. Facts ¶ 14. Irish Shannon remained uninsured over the next several months. Def. Facts ¶¶ 14-15.

After a discussion with Jahn in February 2001, Strickland contacted the Independent Equine Agency about insuring Irish Shannon. Pl. Facts ¶ 19; Def. Facts ¶ 15. In March 2001, Jahn completed and signed an insurance application. Def. Facts ¶ 17; Pl. Facts ¶ 25. The application included the following question: "Has animal ever been treated for accident, illness or lameness? If yes, give date and description of treatment." Def. Facts ¶ 18; Pl. Facts ¶ 27. In response, Jahn

3

wrote "10/99 surgery for impaction." Def. Facts ¶ 18; Pl. Facts ¶ 28. Jahn signed and submitted the application to Independent Equine Agency. Def. Facts ¶¶ 17, 21. The following legend appeared on the application directly below the signature line:

> I understand that the insurance being applied for, if accepted by the Company, will be based on the statements made in this application. If information is withheld or falsely stated, any insurance issued may be subject to rescission or modification as provided by the law of the state in which the application was accepted or policy issued.

*Id.* at ¶ 20. For purposes of the application, Dr. Andrew Schmidt completed a veterinary certificate of examination. Def. Facts ¶ 22. The certificate included the following questions: "Any history or clinical evidence of surgery? If yes explain below. Any colic within last 12 months?" *Id.* Schmidt responded "yes" to the first question and "not to my knowledge" to the second. *Id.* Schmidt explained that Irish Shannon "has a history of gri [?] colic and has had colic surgery. I am unsure of when, and diagnosis. I sure [sic] you are aware of this fact." *Id.*

Independent Equine Agency uses several different insurance underwriters, including Great American. Def. Facts ¶ 16. The relationship between Great American and Independent Equine Agency is governed by contract. Pl. Facts ¶ 20; Def. Resp. Pl. Facts ¶ 20. Great American maintains unwritten underwriting policies with respect to equine mortality risks, including five colic guidelines that materially affect its underwriting decisions. Pl. Facts ¶¶ 35-37. These guidelines require a colic exclusion of approximately one year after a horse undergoes colic surgery without intestinal re-section. Def. Facts ¶ 25. The guidelines strictly require a permanent colic exclusion if a horse has two or more surgical colics, regardless whether an intestinal re-section was performed. Def. Facts ¶ 25-26; Pl. Facts ¶ 38.

Independent Equine Agency forwarded the application and veterinary certificate for Irish Shannon to Great American with a memorandum stating, "Please process a policy . . . at your earliest convenience. Completed application and vet certs attached. Please let me know if any problem regarding colic surgery on IRISH SHANNON 10/99." Def. Facts ¶ 24. Great American approved Irish Shannon's insurance policy with a colic exclusion; Independent Equine Agency requested reconsideration of the exclusion. Pl. Facts ¶ 40; Def. Facts ¶ 28. Kris Knight, the CEO of Independent Equine Agency, attested that the colic exclusion was questioned because the 1999 surgery – "the only surgery that we knew of" – would not necessarily warrant a colic exclusion if no re-section were performed and Irish Shannon remained colic free for twelve months thereafter. Knight Dep. at 54-55; Def. Resp. Pl. Facts ¶ 42. In response, Great American directed an agent for Independent Equine Agency "to inquire about further episodes and surgeries." Pl. Facts at ¶ 43. As a follow-up, Great American then sent written instructions to Independent Equine Agency requesting that it determine whether Irish Shannon had any reoccurrences of colic after the 1999 surgery. Pl. Facts at ¶ 44. Independent Equine Agency did not inquire whether Irish Shannon had undergone additional surgeries based on the fact that only one surgery was disclosed on the application form. Def. Facts ¶ 29.

Independent Equine Agency notified Great American that Irish Shannon had no reoccurrences after the October 1999 surgery. Def. Facts at ¶ 30. This information was based on conversations Independent Equine Agency's Chris Knight had with Jahn or Strickland. Def. Facts ¶ 21, 29. Contrary to Great American's version, Jahn maintains she did not speak with Knight regarding Irish Shannon's medical history. Pl. Resp. Def. Facts ¶ 29. Plaintiffs admit, however, that Strickland was asked whether Irish Shannon had a recurrence of colic after October 1999. Pl. Facts

¶ 50. Great American then issued an equine mortality and major medical insurance policy without a colic exclusion for Irish Shannon through Independent Equine Agency. Def. Facts ¶ 34; Pl. Facts ¶ 53. Jahn gave the policy to Art Herbstman, her husband's business manager. Def. Facts ¶ 35. The policy was renewed on identical terms in 2002. Pl. Facts ¶ 66. Herbstman was given the renewed policy. Def. Facts ¶ 38. In connection with the renewal, plaintiffs were only required to submit an updated veterinary certification of examination and information about Irish Shannon's use and value. Def. Facts ¶ 36. The certification, completed by Dr. Keith Merritt in February 2002, included the following questions and answers:

> Any history or clinical evidence of surgery?
> If yes explain below. X Yes __ No __ NTMK
> Any colic within last 12 months? __ Yes X No __ NTMK
> Colic surgery. Good prognosis & full recovery.

Def. Facts ¶ 37. Dr. Merritt referred to colic surgery in the singular. *Id.*

## B. Insurance Policy Terms

The insurance policy imposed obligations on plaintiffs as conditions precedent to coverage. The policy contained a section entitled "General Conditions" that described plaintiffs' obligations. Under the first condition, plaintiffs agreed that "[i]t is a condition precedent to any liability hereunder that at the commencement of this insurance each animal hereby insured is in sound health and free from any illness, disease, lameness, injury or physical disability whatsoever." Def. Facts ¶ 89. Regarding medical care, notice, and post-mortem examinations, the policy provided:

> It is a condition precedent to any liability of the Company hereunder that:
>
> (a) the Insured shall at all times provide proper care and attention for each animal hereby insured, and

(b) in addition, in the event of any illness, disease, lameness, injury, accident, or physical disability whatsoever of or to an insured animal the insured shall immediately at his own expense employ a qualified Veterinary Surgeon and shall, if required by the Company, allow removal for treatment, and

(c) in the event of the death of an insured animal the Insured shall immediately at his own expense arrange for a post-mortem and autopsy examination to be made by a qualified Veterinary Surgeon, and

(d) in either event the insured shall immediately give notice by telephone or telegram to the person or persons specified on the policy who will instruct a Veterinary Surgeon on the Company's behalf if deemed necessary.

And any failure by the Insured to do so shall render the Insured's claim null and void and release the Company from all liability in connection therewith, whether the Insured has personal knowledge of such events or such knowledge is confined to the representatives of the Insured or other persons who have care, custody or control of the animal(s).

Def. Facts ¶ 50. The policy included an additional document in larger type highlighting plaintiffs'

obligations with respect to immediate notice:

## PLEASE NOTE

IMMEDIATE NOTICE OF ANY OCCURRENCE WHICH COULD RESULT IN A CLAIM INVOLVING ANY ANIMAL INSURED UNDER THIS POLICY MUST BE GIVEN BY YOU, YOUR REPRESENTATIVE, OR OTHER PERSONS WHO HAVE CARE, CUSTODY AND CONTROL OF SUCH ANIMAL.

NOTICE IS TO BE GIVEN TO GREAT AMERICAN INSURANCE – EQUINE OPERATIONS CALL 24 HOURS 1-800-331-0211. PLEASE ADVISE POLICY NUMBER, NAME OF INSURED, AND ANIMAL INVOLVED. ALSO INCLUDE A TELEPHONE NUMBER TO CONTACT WHERE THE ANIMAL IS LOCATED.

GENERAL CONDITION 6 OF THE POLICY STIPULATES THE REQUIREMENTS FOR TREATMENT OF SICKNESS OR INJURY TO AN INSURED ANIMAL. THESE STIPULATIONS MUST BE ADHERED TO IMMEDIATELY WHEN THE CONDITION OR INJURY IS OBSERVED OR KNOWN.

IT IS ESSENTIAL TO CONFORM TO ALL THE ABOVE REQUIREMENTS SINCE FAILURE TO DO SO WILL INVALIDATE ANY CLAIM UNDER THIS POLICY.

Def. Facts ¶ 51. Finally, the insurance policy contained an endorsement modifying the policy in Illinois to prevent any "legal action against [Great American] . . . until there has been full compliance with all the terms of this Coverage Part". Def. Facts ¶ 98. Plaintiffs do not contest the terms of Irish Shannon's insurance policy. Pl. Resp. Def. Facts ¶¶ 50-51, 89, 98. Jahn acknowledged she was aware that insurance policies provide information about (800) numbers for purposes of claim notification and that she understood the information included in the policy. Def. Facts ¶ 52. Plaintiffs, however, point to a sticker on the jacket of the insurance policy that listed two emergency telephone numbers for Independent Equine Agency. Pl. Facts ¶ 69.

## C.     Irish Shannon's History of Colic

The information provided on the insurance application concerning Irish Shannon's medical history was clearly incomplete and misleading. Jahn did not disclose Irish Shannon's history of colic prior to the October 10, 1999 surgery.[1] Specifically, Irish Shannon had surgery for colic on November 13, 1998 and was treated for colic or colic-like symptoms on July 16, 1998, August 15, 1998, August 19, 1998, November 13, 1998, February 13, 1999, February 25, 1999, August 4, 1999, August 5, 1999, August 6, 1999, and October 10, 1999. Jahn Dep. at 130-139. In addition, Jahn failed to disclose Irish Shannon's medical treatment for colic after the October 10, 1999 surgery. Irish Shannon was treated on an emergency basis for signs of colic on October 25, 1999 and October 31, 1999; she was sent to a clinic in Kentucky in November 1999 for 22 days in order "to get to the

[1]Plaintiffs assert that Strickland told Knight about both colic surgeries. Pl. Resp. Def. Mem. Supp. Summ. J. at p. 3. However, plaintiffs' unnumbered factual statement regarding this allegation is disregarded because the assertion fails to comply with Local Rule 56.1.

bottom of . . . why she was having this problem with colic." *Id.* at 100, 131-133. After the clinic determined that **"the derangement to [Irish Shannon's] small intestine will likely cause further episodes of colic** and the mare will require continued management to reduce the chance of these episodes occurring," Jahn and Strickland placed Irish Shannon on a special preventative program that included pure bottled water, a more frequent schedule of smaller amounts of feed, and installed a video monitor in her stall that could be viewed from their residences.[2] *Id.* at 111-114 [emphasis added]. According to plaintiffs, Jahn disclosed only the October 1999 colic surgery on the insurance application due to her understanding that Irish Shannon became insurable without a colic exclusion once she remained colic free for a year. Pl. Facts at ¶ 31. Jahn's strained interpretation of her disclosure obligations does not explain why she failed to disclose post-October 1999 colic treatment and extraordinary colic preventative measures on the insurance application.

## D.    Irish Shannon's Final Colic Surgery

In December 2002, Irish Shannon colicked. Jahn Dep. at 260; Strickland Dep. at 64. Great American was not notified as required by the insurance policy. Def. Facts at ¶ 55. Then, on January 1, 2003, Strickland observed Irish Shannon again showed signs of colic. Def. Facts at ¶ 56; Pl. Facts at ¶ 73. Strickland administered medication and called the veterinarian. *Id.* The veterinarian referred Irish Shannon to a clinic that specializes in colic surgery, but Great American was still not notified. Def. Facts at ¶¶ 56, 59. Around midnight, the clinic informed Jahn surgery was necessary. Jahn did not notify Great American. Def. Facts at ¶¶ 64, 66-67. After surgery, Irish Shannon was

---

[2] The veterinary records of Irish Shannon's treatment for colic were not authenticated. Great American may not rely on those records to show colic history. *Woods*, 234 F.3d at 988 (evidence submitted at the summary judgment stage must be admissible at trial). However, Jahn conceded much of Irish Shannon's colic history in her deposition, which is part of the summary judgment record.

given a poor prognosis and was having difficulties. Strickland Dep. at 69, 71. Nevertheless, Great American was not notified. Def. Facts at ¶¶ 69-70. Jahn made several telephone calls in an attempt to find an ambulance service to transport Irish Shannon, but did not call Great American's 24-hour emergency number. Def. Facts at ¶ 71. Irish Shannon was euthanized around noon on January 2, 2003. Pl. Facts ¶ 74. Great American was not consulted or notified. Def. Facts at ¶¶ 73-74. According to Jahn, she asked her husband to have Herbstman call the insurance company just prior to Irish Shannon's euthanization. Pl. Facts at ¶ 75; Pl. Add. Facts at ¶ 24. According to Great American, Jahn did not call her husband until after Irish Shannon was euthanized. Def. Resp. Pl. Add. Facts at ¶ 24. Jahn did not arrange for a *post mortem* examination as required by the insurance policy. Def. Facts at ¶ 87; Jahn Dep. at 239. Instead, Jahn arranged to have Irish Shannon buried on her farm the day of her death. Def. Facts at ¶ 87; Jahn Dep. at 148-49. After the burial, Jahn called her husband and asked whether Herbstman contacted the insurance company; he replied "it's too distressing for you . . . I don't want him to do it until tomorrow." Jahn Dep. at 149.[3]

Three days after Irish Shannon died, Herbstman called Independent Equine Agency at 12:17 p.m. and left a voicemail message for Cathy, an employee who handles property and casualty matters, even though he was told Cathy was on vacation. Def. Facts ¶¶ 77-79. Herbstman did not call Great American's emergency (800) number specified in the insurance policy, but called the (800) number for Independent Equine Agency on the policy jacket sticker. Def. Facts ¶ 78; Pl. Resp. Def. Facts ¶ 78. Cathy forwarded the message to Great American upon her return from vacation on January 6, 2003. Pl. Facts ¶ 79-80. Great American did not actually receive notice until four days after Irish Shannon's death and burial.

---

[3]Great American apparently does not object to this hearsay testimony.

## E. Great American's Denial of Claim

Upon notice of the claim on January 6, 2003, Great American began investigating Irish Shannon's death. Def. Facts ¶ 92. Great American sent plaintiffs notice that it was investigating the claim under a reservation of rights. *Id.* In accord with Great America's request, Jahn submitted a proof of loss form, along with documentation. Def. Facts ¶ 93. On March 18, 2003, Great American denied liability under the policy. Def. Facts ¶ 97. According to Great American, denial was proper because Jahn's application only disclosed the October 1999 colic surgery and failed to disclose the November 1998 surgery or other colic episodes prior to the 1998 surgery; plaintiffs did not provide timely notice of Irish Shannon's final surgery and euthanasia on January 2, 2003; Great American did not authorize or participate in the decision to destroy Irish Shannon; and plaintiffs did not arrange for a *post mortem* examination. Def. Facts ¶ 97.

## DISCUSSION

## I. Standard of Review

On cross-motions for summary judgment, each movant must satisfy the requirements of Rule 56. *EEOC v. Admiral Maintenance Service, L.P.*, No. 97 C 2034, 1998 WL 102748, at * 6 (N.D. Ill. Feb. 26, 1998). Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport*

*Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.    The Summary Judgment Cross-Motions

Great American's summary judgment motion is predicated on plaintiffs' failure to disclose Irish Shannon's significant history of colic problems on the insurance application: an earlier surgery in 1998, in addition to the disclosed 1999 surgery; treatment for colic by veterinarians at least 15 times, often on an emergency basis; hospitalization for 22 straight days in 1999 to find the cause of the horse's chronic colic, and the veterinarian's prognosis that Irish Shannon was likely to have future colic episodes because of an intestinal condition; non-disclosure of the extraordinary preventative measures plaintiffs then followed; and failure to disclose two colic recurrences in 2000, just nine months before Jahn applied for the policy. The motion is also based on plaintiffs' failure to comply with the insurance policy's conditions of immediate notice to the insurer of the December 2002 colic episode leading to the third surgery, the decision to operate and the decision to euthanize Irish Shannon. Finally, defendants rely on plaintiffs' failure to provide a *post mortem* report on the mare's cause of death.

Plaintiffs' summary judgment motion contends that Great American's refusal to pay their claim was wrongful, and that plaintiffs are entitled to the $125,000 insurance policy proceeds, as well as attorneys' fees and penalties under 215 ILCS 5/155(a). Plaintiffs blame non-disclosure of most of Irish Shannon's colic history on the ambiguous questions on the insurance application, and on inadequate follow-up questioning by employees of Great American and its agent, Independent Equine Agency. Plaintiffs excuse their failure to timely comply with the notice provisions of the

policy because Great American has not shown resulting prejudice and the adjuster assigned to this claim has never actually requested a veterinarian's post-surgery second opinion. Finally, plaintiffs point out that their veterinarian completed a necropsy report at Great American's request several weeks after Irish Shannon's death.

## A.    Material Misrepresentations

Plaintiffs materially misrepresented Irish Shannon's history of colic. Section 154 of the Illinois Insurance Code provides:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

215 ILCS § 5/154. Preliminarily, plaintiffs' contention that Great American may *only* rescind Irish Shannon's insurance policy under this statute is incorrect. *See National Boulevard Bank v. Georgetown Life Ins. Co.*, 472 N.E.2d 80, 86 (Ill. App. 1st Dist. 1985) (jury verdict upheld in favor of insurer under 215 ILCS § 5/154 after it declined to pay proceeds of insurance policy to beneficiary because decedent made material misrepresentation in application).[4] If Jahn materially misrepresented Irish Shannon's condition thereby affecting Great American's acceptance of the risk of a recurring serious colic problem, she may not recover under the insurance policy.

---

[4]Nor is Great American precluded from proceeding under 215 ILCS § 5/154 because of the fine print in the insurance policy. Plaintiffs argue the policy limits Great American's remedies to rescission or modification: "[i]f information is withheld or falsely stated, any insurance issued may be subject to rescission or modification as provided by the law of the state in which the application was accepted or the policy issued." This argument ignores that Illinois law provides another remedy. 215 ILCS § 5/154 (allowing avoidance or defeat of an insurance policy by an insurer).

A misrepresentation in an insurance application "is a statement of something as a fact which is untrue and affects the risks undertaken by the insurer." *Methodist Med. Ctr. of Ill. v. American Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (citations omitted). An incomplete answer or a failure to disclose material information in response to a question may constitute a misrepresentation. *Id.* at 320. In completing the insurance application, Jahn had a duty to act in good faith. *Carroll v. Preferred Risk Ins. Co.*, 215 N.E.2d 801, 802 (Ill. 1966). Jahn was required to completely and truthfully disclose all relevant information so that Great American could determine whether Irish Shannon met its underwriting criteria. *Garde v. Country Life Ins. Co.*, 498 N.E.2d 302, 308 (Ill. App. 4th Dist. 1986).

Jahn admits she did not disclose Irish Shannon's complete medical history. Instead, she merely responded "10/99 surgery for impaction" to the insurance application question "Has animal ever been treated for accident, illness or lameness? If yes, give date and description of treatment." Def. Facts ¶ 18; Pl. Facts ¶¶ 27-28. It is undisputed that Irish Shannon had undergone colic surgery not once, but twice. The first surgery occurred on November 13, 1998, and the second on October 10, 1999. After the October 10, 1999 surgery, Irish Shannon exhibited colic symptoms that required further treatment on October 25 and 31, 1999. In November 1999, Jahn sent Irish Shannon to a Kentucky clinic for 22 days in order "to get to the bottom of . . . why she was having this problem with colic." Jahn Dep. at 100, 131-133. The Kentucky veterinarian found Irish Shannon was likely to suffer future colic because of an intestinal derangement. Jahn Dep. at 110-111. It is undisputed that Jahn and Strickland initiated elaborate preventative measures in November 1999 to prevent colic after the mare's return from Kentucky. *Id.* at 111-114. None of this significant information was disclosed on the insurance application.

Plaintiffs contend the medical history question was ambiguous and therefore a more comprehensive answer was not required. Neither plaintiffs' reliance on the dictionary definition of the word "ever" nor Jahn's purported belief that the question only sought information limited to the most recent surgery is persuasive. Plaintiffs' strained interpretation is contrary to the plain language of the application question. Plaintiffs' untenable interpretation would lead to absurd results: insurance applicants could selectively disclose a single episode or surgery even though there were many others. Jahn's purported belief full disclosure of both surgeries was not required on the application is belied by the fact that she did not disclose Irish Shannon's subsequent colic treatment and the problematic prognosis after the October 1999 surgery.

Plaintiffs argue Great American should be estopped from denying coverage on material misrepresentation grounds due to Independent Equine Agency's failure to specifically inquire about other surgeries in accordance with Great American's instructions. Preliminarily, it is unclear whether this argument is properly raised because the complaint does not plead estoppel. *Meier v. Aetna Life & Cas. Standard Fire Ins.*, 500 N.E.2d 1096, 1099 (Ill. App. 1986) ("For the plaintiff to rely upon estoppel, it must be pleaded") (citing *Beck v. Capitol Life Ins. Co.*, 363 N.E.2d 170, 174 (Ill. App. 5th Dist. 1977)). In any event, Great American's removal of the colic exclusion despite Independent Equine Agency's apparent failure to ask whether Irish Shannon had other surgeries is of no consequence because plaintiffs concealed material information about Irish Shannon's treatment history *after* the October 1999 surgery. Plaintiffs' failure to disclose Irish Shannon's treatment for signs of colic on October 25 and 31, 1999, the Kentucky clinic's prognosis in November 1999 that the mare was likely to have future colic episodes due to an intestinal derangement and the elaborate preventative measures instituted by Jahn and Strickland are material misrepresentations that bar

plaintiffs' claim. The record does not support plaintiffs' contention that Strickland responded ". . . truthfully that no such reoccurrence had taken place." Pl. Resp. Def. Mem. Supp. Summ. J. at 6; Pl. Mem. Supp. Summ. J. at 8. *See Methodist Med. Ctr.*, 38 F.3d at 320 (incomplete answer or omission constitutes misrepresentation). The risk undertaken by Great American was materially affected by plaintiffs' non-disclosures.

Because plaintiffs materially misrepresented Irish Shannon's colic history and prognosis, Great American is entitled to judgment as a matter of law.

## B.    Conditions Precedent to Liability

Great American also moves for summary judgment because plaintiffs failed to comply with all conditions precedent to liability, namely the immediate notice and *post mortem* requirements of the insurance policy.[5] It is undisputed that Irish Shannon experienced a final colic episode on January 1, 2003 and was operated on, euthanized, and buried on January 2, 2003. It is also undisputed that plaintiffs indirectly attempted to provide notice to Great American through a vacationing Independent Equine Agency employee on January 3, 2003. Great American did not actually receive notice until January 6, 2003. Great American did not have an opportunity to exercise its right under the insurance policy to intervene in Irish Shannon's treatment, to participate

---

[5] Summary judgment for Great American would be proper on the basis that Irish Shannon was not in sound health at the commencement of the policy. Def. Facts at ¶ 89 ("[i]t is a condition precedent to any liability hereunder that at the commencement of this insurance each animal hereby insured is in sound health and free from any illness, disease, lameness, injury or physical disability whatsoever"). It is undisputed that Irish Shannon continued to be treated for signs of colic after the October 1999 surgery and that plaintiffs instituted elaborate preventative measures with respect to the care of Irish Shannon in November 1999 due to the mare's diagnosed susceptibility to colic. Jahn Dep. at 111-114.

in the decision to euthanize the mare, or to require a *post mortem* examination. Nevertheless, plaintiffs contend summary judgment is inappropriate because Great American was not prejudiced.

The overwhelming majority of authority on equine insurance policies supports strict enforcement of the notice requirement in Irish Shannon's insurance policy. *See Hiscox Dedicated Corporate Member Ltd. v. Wilson*, 246 F.Supp.2d 684, 693-694 (E.D. Ken. 2003); *Arigato Stables v. American Live Stock Insurance Co.*, 493 A.2d 584 (N.J. App. 1985); *Patti v. Monarch Insurance Co. of Ohio*, 401 N.Y.S.2d 682 (N.Y. Super. 1977); *Circle 4 Stables, Inc. v. National Surety Corp.*, 451 S.W.2d 564, 567 (Tex. App. 1970); *Underwriters at Lloyd's, London v. Harkins*, 427 S.W.2d 659, 664 (Tex. Civ. App. 1968); *Menard v. Citizens Ins. Co. of New Jersey*, 134 So.2d 85, 87 (La. App. 1966). In the words of the *Harkins* court:

> Only through immediate notice can the insurer investigate the causes of illness or death that are certainly unique to livestock policies. Only through immediate notice can the insurer know, or have an opportunity to know, that the animal will receive proper attention and treatment. Only through immediate notice can the insurer protect itself from the unusual hazards that accompany the insuring of animal life, as contrasted to the insuring of human life.

427 S.W.2d at 664. Great American was prejudiced by plaintiffs' failure to provide immediate notice of Irish Shannon's condition. Because of plaintiffs' six-day delay, Great American was deprived of its right to intervene in Irish Shannon's treatment and to participate in the euthanasia decision. Plaintiffs' arguments do not excuse this deprivation. It is telling that plaintiffs failed to give notice of Irish Shannon's treatment for colic in December 2002. Blaming their later failure to give immediate notice to Great American on the New Years' holiday, Irish Shannon's rapidly changing condition, and the concern of Jahn's husband for her emotional state are unpersuasive,

given non-disclosure and concealment of the extent of Irish Shannon's colic problems.[6] Plaintiffs'

contention that notice to Great American would not have changed the handling of Irish Shannon's

condition is mere conjecture and speculation; it is based on nothing more than the testimony of a

claims adjustor in response to a hypothetical question. Pl. Add. Facts ¶¶ 13-15. Nor is plaintiffs'

unsubstantiated assertion that "Irish Shannon was under the care of qualified veterinary surgeons a

material fact. Pl. Mem. Supp. Summ. J. at 11. Plaintiffs ignore Great American's right to

independently evaluate Irish Shannon's medical condition, treatment and destruction.

In addition, it is undisputed that Jahn failed to comply with the policy's explicit requirements

by burying Irish Shannon without performing a *post mortem* examination. Plaintiffs' failure is not

excused by the post-burial completion of a necropsy form or the possibility that in the past Great

American waived its right to *post mortem* examination conditions. The necropsy form was not a

substitute for insurance policy *post mortem* requirements. Def. Resp. Pl. Add. Facts ¶ 23. Plaintiffs'

immediate burial of Irish Shannon on the day of her death deprived Great American of the

opportunity to require a *post mortem* examination. Prejudice to Great American in being deprived

of a *post mortem* examination to assure itself of the cause of Irish Shannon's deterioration takes on

greater significance given the fact that Great American was deprived of notice of Irish Shannon's

colic in December 2002 and of an opportunity to intervene in her medical treatment or the ultimate

decision to euthanize her. Plaintiffs' repeated failure to comply with the conditions precedent for

---

[6]Plaintiffs' reliance on *McFarlane v. Merit Ins. Co.*, 374 N.E.2d 951 (Ill. App. 1st Dist. 1978), is misplaced. McFarlane's failure to timely notify the insurance carrier was reasonable because she was required to rely on her husband: it was his insurance policy and she did not know the name of insurance carrier. *Id.* at 953. Jahn did not attempt to contact Great American after her husband told her neither he nor Herbstman had. Instead, Jahn delayed notice another day. Def. Facts ¶¶ 77-79.

liability renders the claim for insurance proceeds null and void under the policy's terms. Def. Facts ¶¶ 50-51, 89, 98; Def. Facts Ex. 16.

## CONCLUSION

The material facts are undisputed. For the foregoing reasons, Great American is entitled to judgment as a matter of law.

April 6, 2004                                    ENTER:

_Suzanne B. Conlon_
Suzanne B. Conlon
United States District Judge